**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lawrence BEALL, Defendant–Appellant.**

**No. 91–3099.**

United States Court of Appeals, Seventh Circuit.

Argued July 8, 1992.

Decided Aug. 6, 1992.

Rehearing and Rehearing En Banc Denied Sept. 4, 1992.

Barry R. Elden, Diane L. Saltoun (argued), Asst. U.S. Attys., Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Raymond D. Pijon, Chicago, Ill. (argued), for defendant-appellant.

Before CUMMINGS, MANION, and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

A jury convicted Lawrence Beall of tax evasion for the tax years 1986, 1987, and 1988, 26 U.S.C. § 7201, and failing to file an income tax return for the same taxable years, 26 U.S.C. § 7203. The district court sentenced Beall to sixteen months' imprisonment, followed by three years' supervised release and five years' probation to run concurrently to the supervised release term, but consecutively to the term of imprisonment. Beall appeals only his convictions. We affirm.

## BACKGROUND

Beall filed federal income tax returns from 1966 through 1969 but thereafter stopped. During the 1986–1988 tax years involved in the indictment, Beall worked as a subcontractor for Arthur D. Little Valuation Inc. ("A.D. Little") and Touche Ross Company ("Touche Ross"). Although he earned $121,291.26 from such work he did not file tax returns for those years. The evidence showed that Beall instructed A.D. Little and Touche Ross to make his paychecks payable to Mid–America Commodity and Barter Association (MACBA), rather than directly to him. The evidence also revealed that MACBA was a First Amendment organization designed to aid individuals who wished to avoid paying taxes and detection by the IRS.

Beall, with the aid of "shadow counsel," represented himself at trial.[1] He chose not to testify or put on any evidence. Pursuant to Federal Rule of Criminal Procedure 29, he moved for a judgment of acquittal at the completion of the government's case and again at the close of all the evidence on the ground that the evidence was insufficient to support convictions for tax evasion and failure to file tax returns. The district court denied both motions, and the jury convicted Beall.

On appeal, Beall argues that the district court erred in denying his motions for acquittal and renews his claim that the government failed to present sufficient evidence from which the jury could find him

guilty beyond a reasonable doubt. Additionally, he argues that he is entitled to a new trial because the district court erroneously admitted an IRS agent's testimony as expert testimony.

## A. Sufficiency of the Evidence

■ This Court's review of the denial of judgment of acquittal based on insufficiency of the evidence is extremely limited. *United States v. Hagan,* 913 F.2d 1278, 1281 (7th Cir.1990). The jury's verdict will not be overturned unless no rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *United States v. Johnson,* 965 F.2d 460, 467 (7th Cir.1992). Of course, in making this determination, we view the evidence in the light most favorable to the government and defer to the jury's reasonable inferences drawn therefrom. *Id.*

### 1. Tax Evasion

■ To prove a violation of 26 U.S.C. § 7201, the government must demonstrate the existence of a tax deficiency, that the defendant acted willfully, and that the defendant took an affirmative step to elude or defeat the payment of tax. *United States v. Jungles,* 903 F.2d 468, 473 (7th Cir.1990). Beall argues that there is not sufficient evidence to show a tax deficiency because the government never proved that he received any income during the years charged in the indictment. In support of his argument, Beall points out that all of the checks for his services to A.D. Little and Touche Ross were made payable to MACBA and there was no evidence that MACBA paid any portion of that money back to him.

This argument is unpersuasive. The government need not prove that Beall received money from MACBA in order to obtain a conviction under § 7201, because earned income is taxable to those who earn it. *Commissioner v. Culbertson,* 337 U.S. 733, 739–40, 69 S.Ct. 1210, 1212–13, 93

---

**1.** Attorney Raymond Pijon acted as Beall's "shadow counsel" throughout the trial and ar-

gued Beall's motion for acquittal at the close of the government's case.

L.Ed. 1659 (1949). The fact that Beall directed A.D. Little and Touche Ross to make his checks payable to MACBA does not change the fact that these payments were made for services rendered by Beall. *See United States v. Basye,* 410 U.S. 441, 450, 93 S.Ct. 1080, 1086, 35 L.Ed.2d 412 (1972) ("he who earns income may not avoid taxation through anticipatory arrangements no matter how clever or subtle...."). Thus, the government need only show that Beall received money for services rendered and that he had federal income tax due. The government presented testimony and documentary evidence that Beall earned $121,291.26 for work he performed at A.D. Little and Touche Ross during the years 1986–1988 and that he did not file tax returns during those years.[2] This was sufficient to prove a tax deficiency.

■ Next, Beall argues that the government's evidence was insufficient to prove the existence of willfulness and an affirmative act of tax evasion. He asserts that the only evidence in support of the government's position that he willfully evaded the tax laws is that he instructed A.D. Little and Touche Ross to make his checks payable to MACBA. According to Beall, this arrangement with MACBA was lawful and the government presented no direct evidence that Beall used MACBA to avoid paying his taxes.

Beall's argument ignores the evidence in this case. The government did not merely present evidence that Beall had his checks made payable to MACBA. At trial, David Berkey, a former employee of A.D. Little, testified that when he attempted to obtain a taxpayer identification number from MACBA, all he received was a letter from MACBA, in which it identified itself as a First Amendment organization that did not need a taxpayer identification number. The government also called Marvin Dinter, who, several months before Beall's trial, had pleaded guilty to filing fraudulent income tax returns and, as part of his plea agreement, agreed to assist the government in exposing the illegal activities of MACBA. Dinter testified that he had heard about MACBA at a meeting of the New Jersey Americans for Constitutional Taxation. He explained to the jury that in order to avoid paying taxes, he would send checks he received from his clients to MACBA and two or three weeks later he would receive cash back from MACBA, which he did not report on his personal tax return. The jury also heard testimony that Beall did not file tax returns during the time he had his checks sent to MACBA and that he had admitted to a former Touche Ross coworker, Tom Goebelt, that he did not pay taxes because he believed taxes were unconstitutional. Goebelt further testified that Beall told him that he made all his purchases with cash and did not have a savings account in order to conceal his assets from the government.

Beall's contention that the government's evidence proved only that Dinter willfully evaded the tax laws is without merit. The jury was entitled to believe Dinter's unrefuted testimony that MACBA was an organization which aided individuals in concealing their taxable income from the federal government. *See Jungles,* 903 F.2d at 472 (in furtherance of scheme to evade income tax, the defendant instructed his employer to make paychecks payable to MACBA a "clearinghouse for tax protesters and persons who wished to avoid detection by the IRS"). Further, although there was no direct evidence that Beall used MACBA to conceal his income from the IRS, in light of Dinter's unrefuted testimony, it was reasonable for the jury to infer that one purpose of Beall's assignment of wages to MACBA was to evade paying income taxes. *See United States v. Morris,* 957 F.2d 1391, 1396 (7th Cir.1992) (circumstantial evidence may provide the sole support for a conviction). This inference is bolstered by Beall's failure to file income tax returns during the years that he assigned his income and the admissions he made to Goebelt.

The government's objectives would have been better served had they presented evi-

---

**2.** Beall does not challenge the government's evidence with regard to his employment and his failure to file tax returns during the years 1986–1988.

dence that Beall actually received money back from MACBA. Moreover, we cannot understand why the government did not present specific evidence of the precise methods by which Beall used MACBA to conceal his income. Nevertheless, viewing the evidence in the government's favor and the jury's verdict under the limited standard of review, as we must, we conclude that a rational jury could reasonably find that Beall requested that A.D. Little and Touche Ross send his checks to MACBA in order to evade the taxes which he owed. Accordingly, the evidence was sufficient to support a conviction for willful tax evasion under § 7201.[3]

### 2. Failure to File Income Tax Returns

■ To prove a violation of 26 U.S.C. § 7203, the government must demonstrate that Beall was required to file a return, that he failed to file a return, and that this failure was willful. In support of his claim that the evidence was insufficient to sustain a conviction under § 7203, Beall reasserts his argument that the government failed to prove that he earned income during the years charged in the indictment. As stated earlier, this argument is unpersuasive.

The evidence established that during the years 1986–1988 Beall earned $121,291.26 for work he performed at A.D. Little and Touche Ross, that he did not file tax returns during those years, that he attempted to avoid paying income tax on these earnings by transferring his paychecks to MACBA, and that he admitted to a former co-worker that he did not pay taxes. Considering this evidence, the jury could have reasonably concluded beyond a reasonable doubt that Beall violated § 7203.

### B. Expert Testimony

■ Last, Beall argues that he is entitled to a new trial because the district court improperly permitted expert IRS Agent Wagner to testify to matters which exceeded the scope of his expertise and invaded

the province of the jury. Specifically, Beall contends that Agent Wagner's testimony was inadmissible evidence under *United States v. Benson*, 941 F.2d 598 (7th Cir. 1991). In *Benson*, this court reversed the defendant's conviction and ordered a new trial because the government's expert witness, an IRS agent, testified to the ultimate issues of whether the taxpayer had received income from underwriters for investigative fees rather than as a non-taxable payment of a settlement and whether the taxpayer was entitled to Social Security Disability benefits. *Id.* at 605. The *Benson* court noted that these matters were not within the IRS agent's area of expertise because they involved "no tax law concept or accounting principle to explain." *Id.* As such, the expert's testimony concerning these matters consisted merely of "inferences from the evidence that he was no more qualified than the jury to draw." *Id.*

■ Ordinarily this court reviews a district court's determination of the admissibility of expert testimony for an abuse of discretion. *United States v. Tipton*, 964 F.2d 650, 654 (7th Cir.1992). However, because Beall failed to object to the testimony at trial, this court reviews the admissibility of the expert's testimony for plain error. *United States v. Kladouris*, 964 F.2d 658, 669 (7th Cir.1992). A defendant prevails under the plain error standard only if he can demonstrate that the alleged error resulted in an "actual miscarriage of justice." *United States v. Torres*, 965 F.2d 303, 306 (7th Cir.1992).

Here it was not error, much less plain error, for the district court to admit Wagner's testimony. Beall improperly characterizes Wagner's testimony as bolstering Dinter's testimony and answering the ultimate question—whether Beall used MACBA to conceal income from the IRS. The record reveals that Wagner did not discuss Dinter's testimony, the nature of MACBA, or the tax consequences of Beall's assignment of his checks to MACBA. Rather,

---

**3.** Beall does not contend that the jury instructions concerning the term "willful" under §§ 7201 and 7203 did not comply with *Cheek v.*

*United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991).

Wagner merely summarized the government's documentary evidence (financial evidence such as: canceled checks, payment vouchers, invoices, and check request forms) regarding Beall's employment during the years 1986–1988 and testified as to the tax consequences of Beall's relationship with A.D. Little and Touche Ross. This testimony was within Wagner's area of expertise. *See Benson,* 941 F.2d at 605.

### CONCLUSION

For the reasons stated, Beall's convictions are

AFFIRMED.